UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:14-cv-02010-SEB-MJD |
| | ) | |
| MARIA MONSERRAT AVALOS HERNANDEZ | ) ) | |
|    a/k/a MARIA MONSERRAT AVALOS | ) | |
|    a/k/a MARIA HERNANDEZ AVALOS | ) | |
|    d/b/a EL PARRAL DANCING CLUB, | ) | |
| MARIA MONSERRAT AVALOS HERNANDEZ, LLC | ) ) | |
|    d/b/a EL PARRAL DANCING CLUB, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

This cause is before the Court on Plaintiff's Motion for Default Judgment [Dkt. No. 16] as to Defendant Maria Monserrat Avalos Hernandez individually and d/b/a El Parral Dancing Club ("Hernandez").[1] Defendant has not responded and the time for doing so has

---

[1] Plaintiff has not moved for default judgment against defendant Maria Monserrat Avalos Hernandez, LLC ("the LLC"). Although a Clerk's Entry of Default was entered on January 19, 2017 as to both Defendants, Plaintiff did not supply proof of service as to the LLC. Thus, we **instruct the Clerk** to amend the Entry of Default [Dkt. No. 12] as follows:

> Plaintiff has moved for an entry of default against Defendant MARIA MONSERRAT AVALOS HERNANDEZ A/K/A MARIA MONSERRAT AVALOS A/K/A MARIA HERNANDEZ AVALOS, INDIVIDUALLY AND D/B/A EL PARRAL DANCING CLUB, pursuant to rule 55(a) of the Federal Rules of Civil Procedure, and has submitted an affidavit in support therefore.

> Accordingly, default is hereby entered this 18th day of January, 2017, against Defendant MARIA MONSERRAT AVALOS HERNANDEZ A/K/A MARIA MONSERRAT AVALOS A/K/A MARIA HERNANDEZ

now passed. The Court **GRANTS** the motion for the reasons set forth below.

**Standard**

Entry of default was made against Defendant Hernandez on January 19, 2017. [Dkt. No. 12.] Following a clerk's entry of default, "the well-pled allegations of the complaint relating to liability are taken as true, but those relating to the amount of damages suffered ordinarily are not." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). "[O]nce a default has been established, and thus liability, the plaintiff must establish his entitlement to the relief he seeks." *J&J Sports Productions, Inc., v. The Old School Way, LLC*, No. 15-c-449, 2015 WL 4623598, at *1 (E.D. Wisc. July 30, 2015) (citing *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004)). Therefore, on proper application by a party for entry of default judgment, the court must conduct an inquiry to ascertain the amount of damages with "reasonable certainty." *Id*.

**Background**

Plaintiff J&J Sports Productions, Inc. ("J&J") purchased the proprietary rights to distribute *Manny Pacquiano v. Juan Manuel Marquez, IV Welterweight Fight Program* (and the "under-card bouts" and fight commentary), which was broadcast on December 8, 2012 (the "Fight"). After purchasing the rights to the Fight, J&J entered into sublicensing agreements with various commercial establishments (e.g., hotels, racetracks, casinos, taverns, bars, restaurants, social clubs) to permit public exhibition of the Fight.

Defendant Maria Monserrat Avalos Hernandez operates her business El Parral

---

AVALOS, INDIVIDUALLY AND D/B/A EL PARRAL DANCING CLUB
for failure to plead or otherwise defend in this action.

Dancing Club (the "Club") at 3830 North Georgetown Road, Indianapolis, Indiana 46254. Private investigator Thomas G. Newgent entered El Parral Dancing Club on the night of December 8, 2012 and observed the exhibition of the Fight. [Affidavit of Thomas G. Newgent, Dkt. No. 16-1 ("Newgent Aff.").] Newgent purchased one Corona beer while in the Club. During this time, Newgent observed a crowd of between 27-30 people in the Club which had a capacity of approximately 200-300 people. He observed two televisions, one 45" and one 42-46", both of which were displaying the Fight; however, loud music was playing while he was in the Club, which obstructed the audio of the Fight. Defendant did not lawfully license the Fight from J&J; rather, she unlawfully intercepted and exhibited the Fight in the Parral Dancing Club. [Affidavit of Joseph M. Gagliardi, President of J&J Sports, Dkt. No. 16-3 ("Gagliardi Aff.") at ¶ 7.] Had Defendant purchased a commercial sublicense to broadcast the Fight, the fee would have been $8,200. [*Id.* ¶ 8.]

J&J filed this suit against the Defendant asserting claims for violations of the Communications Act of 1934, 47 U.S.C. § 605 and the Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C.§ 553 on the grounds that Defendant did not obtain from J&J a license to exhibit the Fight. J&J then served Hernandez with a summons and the complaint on March 24, 2015 [*see* Dkt. No. 11]. She has not responded to J&J's Complaint or filed an appearance in the case. On January 19, 2017, the Clerk entered default against the Hernandez.

J&J now seeks entry of default judgment pursuant to Federal Rule of Civil

Procedure 55(b).[2] J&J seeks the maximum amount of statutory damages ($10,000); enhanced damages; $413.00 in costs; and $1,618.50 in attorneys' fees.

## Discussion

J&J's suit is based on 47 U.S.C. §§ 553 and 605. "[T]he interception of cable television programming as it travels through the air is to be governed by § 605, while the interception of cable television programming traveling over a cable network (and specifically, the manufacture and distribution of decoder boxes) is to be governed by § 553(a)." *United States v. Norris,* 88 F.3d 462, 468 (7th Cir. 1996). J&J acknowledges that it cannot recover duplicative damages under both sections 553 *and* 605; thus, it has pled its claims in the alternative. *See J&J Sports Prods., Inc. v. Gonzales*, 2013 WL 4777209, *2 (S.D. Ind. Sept. 5, 2013) (citing *J&J Sports Prods. v. Aguilera*, 2010 WL 2362189 (N.D. Ill. 2010) ("[A]lthough the precise means of transmission has not been determined, under the circumstances of this case, where Plaintiff was deprived of the opportunity to conduct discovery regarding the transmission at issue because of Defendants' failure to appear or defend in this action, Plaintiff should not suffer the resulting prejudice.")).

Under § 605(e)(3)(C)(i) a claimant may elect actual damages or statutory damages. Statutory damages for each violation of § 605 range from $1,000 to $10,000; the amount awarded is based on the court's discretion to arrive at a just amount to compensate for the violation. In addition, enhanced damages are available where the

---

[2] J&J has filed the requisite affidavit of non-military service. [Dkt. No. 8-1.]

4

court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(ii). In such cases, the court may use its discretion to increase the award of damages by an amount of not more than $100,000 for each violation.[3]

We know that had Defendant properly obtained a license to legally show the Fight, she would have paid J&J the amount of $8,200 based on the capacity of the establishment, between 200-300 persons. [Gagliardi Aff. ¶ 8.] Although J&J's actual damages are readily ascertainable in the amount of $8,200, it seeks a statutory award of $10,000 as a deterrence measure. Because actual damages are meant to make Plaintiff whole and not punish or deter, we exercise our discretion to award $8,200 as a just amount to compensate for the violation.

J&J also requests enhanced damages of $30,000. [Dkt. No. 16 at 11 (Plaintiff requests that the court "award enhanced damages three times the statutory damages award" of $10,000.).] Courts have considered several factors when determining whether and how much enhanced damages are appropriate, including: "(1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover

---

[3] Likewise, under § 553(c)(3)(A), a claimant may elect actual or statutory damages. Statutory damages for each violation of § 553 range from $250 to $10,000; the amount awarded is based on the court's discretion to arrive at a just amount to compensate for the violation. 47 U.S.C. § 553(c)(3)(A)(ii). In addition, enhanced damages are available where the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain. 47 U.S.C. § 553(c)(3)(B). However, under § 553, the upper limit for an increase in damages that a court may award in its discretion is $50,000 for each violation. *Id.*

5

charge on the night of the event." *J&J Sports Prods., Inc. v. Gonzalez*, 2013 WL 4777209, *3 (S.D. Ind. Sept. 5, 2013) (quoting *J&J Sports Prods, Inc. v. Aguilera,* 2010 WL 2362189 (N.D. Ill. June 11, 2010)). Courts also consider "the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense)." *Id.*

J&J provided evidence that the interception of the Fight was intentional: Defendant could not have accidentally or innocently intercepted the signal. [Gagliardi Aff. at ¶ 9.] Based on this evidence, we conclude that Defendant's violation of § 605 was willful. Sufficient evidence exists to find that Defendant's violation of § 605 was done "for purposes of direct or indirect commercial advantage or private financial gain." *See* 47 U.S.C. § 605(e)(3)(C)(ii).

J&J alleges that this is not the first time that it Hernandez has pirated its broadcasts. In 2010, Thomas G. Newgent visited El Parral Dancing Club when the Club was displaying the "Mosley –v- Mora" fight. [Affidavit of Thomas G. Newgent dated September 22, 2010 at Dkt. No. 16-2 ("Newgent 2010 Aff.").] That night, Newgent paid a $10.00 cover charge to enter the Club and he purchased one Corona beer while in the Club. During this time, Newgent observed a crowd of between 40-50 people in the Club, which had a capacity of approximately 200-300 people. He observed three televisions, one of which was big screen (50-60"), the other two were 32-36 televisions, all three of which were displaying the Mosley –v- Mora fight. Newgent also observed printed color cardboard flyers, approximately 12" x 18" in size, advertising all four of the HBO Pay Per View fights being

shown at the Club that evening. The flyers were posted on the front window and the walls throughout the Club. J&J stated in its briefing that Defendant "never suffered any consequences for the previous offense" [Dkt. No. 16 at 7]; however, we have not been informed whether it attempted to recover the licensing fee or any damages from Defendant, whether it initiated litigation, or the result of its investigation.

J&J's actual damages in this case are not insubstantial: $8,200.00. Although there is no evidence here that Defendant charged a cover to enter the bar on the night of the Fight or that it advertised the Fight, this is not the first time that Defendant has pirated J&J's programming. In these circumstances, an award of enhanced damages in the additional amount of $8,200 is appropriate. *See Gonzalez*, 2013 WL 4777209, at *3-4 (awarding $10,000 in enhanced damages where statutory damages of $10,000 were awarded, the program was broadcast to 100-150 people on multiple televisions, the defendant had not participated in the litigation, and the court believed a deterrent to defendant and other potential offenders was necessary) (collecting cases); *J&J Sports Prods., Inc. v. Turrubiartes*, 2013 WL 3878740, *2 (S.D. Ind. July 26, 2014) (Despite finding some evidence of willfulness, because there was no evidence that the fight was publicized and no evidence the defendant was a repeat offender, no enhanced damages were awarded.).

J&J seeks payment of its attorneys' fees ($1,618.50) and costs ($413.00), pursuant to § 605(e)(3)(B)(iii). (The court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.") and § 553 (same). We find J&J's costs and attorneys' fees to be reasonable and

7

supported by the evidence.

For the reasons set forth above, the Court **GRANTS** J&J's motion for default judgment and awards J&J the total amount of $18,431.50. J&J has fifteen (15) days to perfect service on Maria Monserrat Avalos Hernandez, LLC and file a proof of service; otherwise, its claims against the LLC will be dismissed and final judgment shall enter accordingly.

Date: 11/13/2017

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Kyle A. Cooper
GREENE & COOPER, LLP
kcooper@greenecooper.com

Helen V. Cooper
GREENE & COOPER ATTORNEYS LLP
hcooper@greenecooper.com

Charlie William Gordon
GREENE & COOPER PSC
cgordon@greenecooper.com

MARIA MONSERRAT AVALOS
HERNANDEZ A/K/A MARIA MONSERRAT
AVALOS A/K/A MARIA HERANANDEZ AVALOS,
INDIVIDUALLY AND D/B/A EL PARRAL
DANCING CLUB
8342 Township Lane Rd Apt A
Indianapolis IN 46268